UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ASHLEY THERESA GOODMAN

                Plaintiff,

v.

CORONADO STUDENT LOAN TRUST, PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, AND AMERICAN EDUCATION SERVICES,

                Defendants.

Civil No. 21-2648 (JRT/LIB)

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' AES AND PHEAA MOTION TO DISMISS**

Bryan M. Wiley and Timothy D. Johnson, **SMITH JADIN JOHNSON PLLC**, 7900 Xerxes Avenue South, Suite 2020, Bloomington, MN 55378, for plaintiff;

Orin J. Kipp, **WILFORD GESKE & COOK PA**, 7616 Currell Boulevard, Suite 200, Woodbury, MN 55125, for defendant Coronado Student Loan Trust;

Karl Joseph Johnson, **TAFT STETTINIUS & HOLLISTER LLP**, 2200 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for defendants Pennsylvania Higher Education Assistance Agency and American Education Services.

Plaintiff Ashley Theresa Goodman filed this action against Defendants Coronado Student Loan Trust ("Coronado"), Pennsylvania Higher Education Assistance Agency ("PHEAA") and American Education Services ("AES") alleging a violation of the Federal Debt Collection Practices Act ("FDCPA") in relation to Goodman's student loans. AES was the servicer of Goodman's student loans and PHEAA is the parent company of AES. AES and PHEAA brought the Motion to Dismiss currently before the Court. Because AES and

PHEAA are not "debt collectors" as the FDCPA defines the term, the Court will grant their Motion to Dismiss, and the claims asserted against them in Goodman's Complaint are dismissed with prejudice.

## BACKGROUND

From 2008 to 2011, Goodman attended the Art Institutes of California and the Art Institute of Pittsburgh for which she was required to take out student loans. (Compl., ¶ 27, Dec. 10, 2021, Docket No. 1.) Goodman's student loans were primarily used for personal, family, or household purposes. (*Id.* ¶ 28.) Goodman's loans were owned by Education Management Corporation—a for-profit company who then sold and assigned the loans to Coronado. (*Id.* ¶¶ 3, 29.) AES administered collections on behalf of its parent PHEAA and Coronado. (*Id.* ¶¶ 43–44.)

Goodman defaulted on her loans in 2019 and on November 22, 2019, Goodman voluntarily filed for Chapter 13 Bankruptcy. (*Id.* ¶ 51; *Id.*, Ex. M.) None of the lenders of the student loans filed claims on their own behalf in the bankruptcy action. (*Id.* ¶¶ 57–61.)[1] Goodman's bankruptcy counsel filed claims on behalf of the student loan lenders and subsequently objected to those claims based on their merit. (*Id.* ¶¶ 64–72.) None of the creditors appeared in relation to Goodman's objections and the bankruptcy court, therefore, disallowed those claims. (*Id.* ¶¶ 68–72.) The bankruptcy court's orders did not

---

[1] Neither AES nor PHEAA were involved in the bankruptcy case as they are not the lenders of the loan.

discuss the merits of any of the claims.  (Decl. Karl Johnson Supp. Mot. Dismiss, Exs. 4–8, Jan. 25, 2022, Docket No. 8.)  The lenders were then notified of the bankruptcy court's findings.  (*Id.* ¶ 73.)

Subsequent to the entry of the claim disallowance orders and Defendants' knowledge of the same, Defendants have continued to attempt to collect the student loan debt.  (*See generally* Compl.)  As such, Goodman filed the present action against Defendants asserting one count of a violation of the FDCPA.  It appears as though Coronado intends to answer the Complaint, but AES and PHEAA have brought this current Motion to Dismiss the claim against them.  (Stip. Extend Time Ans., Mar. 3, 2022, Docket No. 14; Mot. Dismiss, Jan. 25, 2022, Docket No. 4.)

### DISCUSSION

#### I. STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "'claim to relief that is plausible on its face.'"  *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).  The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in their favor. *See Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl.*

3

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In reviewing a motion to dismiss, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). The Court may consider "some materials that are part of the public record or do not contradict the complaint." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

**II.     ANALYSIS**

As stated above, Goodman only brings one cause of action against the Defendants—a violation of the FDCPA. An FDCPA claim must meet three elements: "(1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Klein v. Stewart Zlimen & Jungers, Ltd.*, No. 18-cv-658, 2019 WL 79317, at *3 (D. Minn. Jan. 2, 2019).

The main dispute here is whether AES and its parent company PHAES are "debt collectors" as defined under the FDCPA. A "debt collector" for purposes of the statute is any person who "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

owed or due another." 15 U.S.C. § 1692a(6). The term does not include any person collecting or attempting to collect a debt when such activity "concerns a debt which was not in default at the time it was obtained by such person." *Id.* at § 1692a(6)(F). Many courts have held that a student loan servicer who begins servicing the loans prior to default is not a debt collector for FDCPA purposes. *Brumberger v. Sallie Mae Servicing Corp.*, 84 Fed. App'x 458 (5th Cir. 2004); *Rivelli v. Penn. Higher Educ. Assistance Agency*, 2019 WL 1473091 (E.D.N.Y. Apr. 3, 2019); *Haysbert v. Navient Solutions, Inc.*, 2016 WL 890297 (C.D. Cal. Mar. 8, 2016); *Jones v. Penn. Higher Educ. Assistance Agency*, 2017 WL 4594078 (C.D. Cal. July 24, 2017); *Cohen v. Mort. Elec. Registration Sys., Inc.*, 2009 WL 4578308 (D. Minn. Dec. 1, 2009) (holding that a mortgage servicing company was not a debt collector under the FDCPA because it began servicing a mortgage prior to default).

AES asserts that it began servicing Goodman's student loan debt prior to the debt falling into default and cannot fall under the definition of "debt collector." Goodman claims that AES and PHEAA have not established that they were not debt collectors because the record, as it stands now, does not make clear when the student loans were in default. And in fact, she argues that default occurred when late fees were assessed to her account beginning in July 2019 and since Coronado was sold Goodman's loan in December 2019, AES and PHEAA began service after the loan was in default.[2]

---

[2] Nowhere has Goodman asserted that AES is associated with Coronado and began servicing her loan only when Coronado took possession of it. The date when the loan was sold to Coronado has no significance as to when AES began servicing the loan.

Attached to Goodman's own complaint is a financial activity summary from AES provided to Goodman upon her request. (Compl., Ex. M.) The financial activity summary shows that there were disbursements in 2008, 2009, and 2010 and that payment was made to AES as early as 2012. (*Id.*) The document also shows that payments were consistently made to AES between 2015 and July 2019 when late fees were charged to the account. (*Id.*) Further, AES and PHEAA submitted a statement, from AES sent to Goodman dated January 11, 2012. (Johnson Decl., Ex. 2.)[3] This demonstrates that AES was servicing Goodman's loan as early as 2012.

The Court must, then, determine or at least estimate when the loan fell into default. Goodman argues that it is unclear when the loans went into default but points to nothing in the record or any assertion in her complaint that it was earlier than July 2019, when she was assessed late fees. In fact, the only time the complaint mentions default is in relation to an AES letter sent in November 2021. (Compl., ¶ 227.) Courts have concluded that "the FDCPA's legislative history is consistent with construing 'in default' to mean a debt that is at least delinquent, and sometimes more than overdue." *De Dios v. Int'l Realty & Inv.*, 641 F.3d 1071, 1074 (9th Cir. 2011). And further, "courts repeatedly distinguished between a debt that is in default and a debt that is merely outstanding, emphasizing that only after some period of time does an outstanding debt

---

[3] The Court may consider this document because it does not contradict the complaint in that Goodman did not explicitly state the exact date when AES began servicing her student loan in the Complaint. Further, the statement actually does comport with exhibits attached to the Complaint.

go into default." *Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 86 (2d Cir. 2003). So even if Goodman had outstanding debt (i.e. overdue payments) on her student loans in 2019, this does not necessarily mean she was in default at that time.  Arguably she may not have fallen into default until much later, in 2021, when AES began to treat her debt as delinquent.  The case law indicates that the earliest her default could have occurred was in July 2019 and as the standard for a motion to dismiss must be favorable to Goodman, the Court will use the earliest possible date supported by the record, which is July 2019.

Goodman bears the burden of at least plausibly alleging her student loan was in default prior to AES servicing the loan.  The record shows that AES began servicing the loan well before July 2019, the earliest date at which, based upon the record, the debt was in default.  As such, the Court finds that AES does not fall under the definition of "debt collector" as defined under the FDCPA.  Perhaps Goodman's cause of action could be amended if she were able to show the loan was in default prior to AES's assumption of service, but Goodman cannot make such a showing.  Her attempt would be futile because the record before the Court clearly establishes that the loan was not in default when AES began servicing it.  *Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 589 (8th Cir. 2018) (holding that a court may deny leave to amend in instances where an amendment would be futile and the amended complaint would still be unable to survive a motion to dismiss).

Thus, a claim under the FDCPA against AES cannot survive a motion to dismiss and AES will be dismissed from this action. PHEAA is also dismissed because Goodman asserts her claim against PHEAA based upon a theory of respondeat superior. As AES is not a debt collector for purposes of the FDCPA neither is its parent company, PHEAA. In sum, the Court will grant AES and PHEAA's Motion to Dismiss and terminate them from this action.[4]

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' AES and PHEAA Motion to Dismiss [Docket No. 4] is **GRANTED** and the claims asserted against AES and PHEAA in Plaintiff's Complaint [Docket No. 1] are **DISMISSED WITH PREJUDICE**.

DATED: September 1, 2022  
at Minneapolis, Minnesota.

                                                                JOHN R. TUNHEIM  
                                                United States District Judge

---

[4] Because the Court is granting the Motion to Dismiss on these grounds, it need not reach the additional arguments made in the briefs.